This is a motion to set aside process of citation in a divorce suit.
The husband is a resident of the State of Florida, and his wife is domiciled within this jurisdiction. He has, apparently, already secured a decree of divorce in Florida and she has filed a petition in this state to secure a like decree in her favor. The proofs before me must be determined upon the effect of three letters which passed between the respective fathers of the parties hereto, the wife's father being named Howard and the husband's, of course, Ultcht. After a long separation of the parties the wife's father, on April 11th, 1924, wrote to the elder Ultcht, saying that he had previously that day telephoned the latter at the request of some police officer, and said further:
"I wrote almost a month ago a letter to Floyd in which I told him I would be glad to keep an appointment with him, and I named a time and place that would be convenient for me."
 He concluded the letter by saying: *Page 584 
"However, I will be glad to hear from you relative to having a friendly meeting."
Two days later the husband's father replied to the foregoing letter, complaining of the failure of the wife and her father to keep appointments, and, after saying that there were some matters that should be discussed by all of the persons mentioned, concluded his letter as follows:
"If you will not meet us here in Mt. Vernon, kindly state the time and place, making it in the afternoon, if possible, next week, where we may see you all in New Jersey."
In response to that the father of the wife replied, almost three weeks later, as follows:
"Yours of August 13 came at an inopportune time because of vacation plans, so I take this opportunity now of answering.
"What you have to say is of course of great interest to me, as the welfare of Evelyn and Betty of course have meant a great deal to me, especially in the way of care and attention. I can readily understand and heartily agree with you that there are matters to be gone over especially as between Floyd and Evelyn.
"Things with me just now are in such shape that I cannot give the time to go to Mount Vernon, but if you and Mrs. Ultcht and Floyd can arrange to be at my house some evening before you leave for the South, we can all conveniently meet. We can make it any evening but if time presses you we will fix it for this Friday, and as you say you prefer the afternoon we will expect you at fourthirty."
On September 5th, the day fixed in the last letter, the husband and his father kept the appointment by going to the home of the wife's father in Union Hill, New Jersey, the former two being domiciled at that time in Mount Vernon, New York, and after arriving at the Howard home the husband was served with the process to which objection is now made, either before or after a discussion of the family troubles. There is some dispute as to whether it was before or after, but with that I am not concerned, for reasons which will be apparent.
The husband's objection to the service is based upon the broad dictate of justice, that one shall not be inveigled into a jurisdiction for the purpose of service of process upon him. But the wife says she had nothing to do with procuring his presence in this state, and, furthermore, that the husband came here voluntarily upon his own suggestion and without *Page 585 
solicitation. As to the first proposition, it is perfectly clear that her father was acting in her behalf, and she is bound by whatever he did equally as much as if done by her in person. In the second place, I agree that the conference at which service was made was at the request and suggestion of the husband. The letter of August 11th from her father clearly indicates that there had, for a long time before, been some effort on the part of the husband to secure a meeting with his wife. The language which I have quoted above, to the effect that he had proposed a time and place of appointment, leads me to so believe.
If, in truth, the proposal of a conference to settle a number of questions, as indicated in the letter of August 13th, had been initiated by the husband or his representative, he should be protected when he came into this jurisdiction, upon an agreement with the wife that it was to be for the purpose of discussing their affairs. I can see little difference between the proposal of a plaintiff that he and the defendant meet for a settlement of their differences in a state where the latter is not resident, and thereupon effects service on the latter, and a case where, as here, the wife contends the proposal for such a meeting is made in the course of correspondence by the defendant, and the plaintiff takes a sharp advantage of the latter's unwariness and lures him into the foreign jurisdiction by pretending to acquiesce in his desire for a settlement. When she accepted his offer and allowed him to put his head in the noose, every dictate of justice and fair dealing precluded her from taking a sharp advantage of his trust in her sincerity. She knew that, in reliance on her agreement, he was placing himself in danger of service that could not otherwise have been accomplished. Acting upon faith in her word, he lost an immunity which he had previously enjoyed. She should not be permitted to agree upon his coming for one purpose and then take advantage of his presence for another. The process of this court should not be lent for such uses. The policy of all courts favors an opportunity of the parties to private disputes settling the same, and as Mr. Justice Van Dyke said in Williams v. Reed, 29 N.J. Law 385: *Page 586 
"Common justice as well as common courtesy to our neighbors requires that we should do to them as we would have them do to us in such cases."
The wife further contends that, according to her husband's own proofs, he was constantly passing back and forth into this state, and that, therefore, his privilege had been waived. I cannot agree with this either, because, while it is true, as pointed out in Case v. Smith, 152 Fed. Rep. 730, that had he been served upon any other visit to this state it would have been effectual, that does not in the slightest change the situation where the action was taken at a time and place to which the husband had been invited (and it makes no difference whether expressly or by implication) to attend by the adverse party.
Finally, it is said that the service should not be disturbed, because there is no reason for the application of the rule in question in a divorce suit where, as here, the defendant has already secured a decree severing the bonds of matrimony in the State of Florida, and the petitioner only seeks to supplement that decree by one here that will sever their relations everywhere. It seems to me apparent that the slightest consideration of this argument would disclose its weakness. Legal proceedings are carried on under established rules of procedure, and any individual is entitled to object to a judgment or decree being entered against him except in accordance therewith. Means have been provided by the legislature to acquire jurisdiction without any enticement being practiced; so that the wife is by no means remediless if the present service is declared invalid. But to allow such service to stand in violation of the rule of common justice herein discussed, would be to subject the defendant in a divorce suit to litigation of the most important questions, such as alimony, custody of children and others in a (to him) foreign jurisdiction at a great distance from the one in which he is living. It may be said that substituted service will place him in the same position; but, at least, in that event, he cannot be heard to complain that his rights have been invaded, or that any fraud or trickery has been employed against him in the service of the process of this court against him. *Page 587